BURRUS *v.* BOARD OF IMPROVEMENT OF SEWER IMPROVEMENT DISTRICT No. 1 OF ARGENTA.

## Opinion delivered April 22, 1918.

1. LOCAL IMPROVEMENT—ERROR IN ORDINANCE AND PUBLICATION—CORRECTION.—An ordinance establishing a sewer district and the first notice thereof published, contained an error as to the cost of the improvement. The error was corrected and the amount properly appeared in the city records; *held*, the correct record being signed by the mayor, and a republication being had within the time specified by statute, was sufficient to correct the error in the former publication.

2. LOCAL IMPROVEMENT—ORGANIZATION—ACTION TO QUESTION—TIME FOR BRINGING.—An action to invalidate the proceedings looking to the establishment of a local improvement district must be brought within thirty days after publication of the notice of the findings of the city council on the question of a majority having signed the petition as provided by statute.

3. LOCAL IMPROVEMENT—SEWER—BENEFITS.—In the organization of an improvement district, *held* the finding of the chancellor as to the assessment of benefits upon plaintiff's land would not be disturbed on appeal.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

*Hal L. Norwood* and *Ratcliffe & Ratcliffe*, for appellants.

1. The assessments are void because the property received no benefits from the sewer system. 93 Ark. 543.

2. There has been no final valid assessment of benefits.

*Rose, Hemingway, Cantrell, Loughborough & Miles*, for appellees.

1. The ordinance was duly passed. The assessments were valid and beneficial. All the acts of the directors were according to law. 98 Ark. 544; Kirby's Digest, § § 5684-5.

2. Any objectionable or unconstitutional parts of an ordinance may be stricken out where clerical errors do not invalidate an ordinance. 37 Ark. 356; 80 *Id.* 150; 93 *Id.* 168; 94 *Id.* 422; 95 *Id.* 327; 56 *Id.* 350; 70 *Id.* 549;

80 *Id.* 108; 87 *Id.* 85; 95 *Id.* 575; 30 Atl. 46.  See also Sutherland, State Const., § 260; Endlich, Int. Stat., § 302.

3. The ordinance was duly passed and published and plaintiffs are barred by not bringing suit in thirty days.

McCULLOCH, C. J.  An improvement district designated as Sewer Improvement District No. 1 of Argenta was organized in that city (now North Little Rock) for the purpose of constructing a system of sewers in the territory described.  The district covers a large area, perhaps the greater portion of that city.  The ordinance levying the assessments on the property in the district was passed by the city council on September 17, 1914. There was publication of the ordinance in a newspaper, as required by statute (Kirby's Digest, § 5685), the next day after its passage, and a republication of the ordinance on October 9, 1914.

Appellants are the owners of lots within the boundaries of said district and they instituted this action in the chancery court of Pulaski County to restrain the board of improvement of the district from collecting or attempting to collect assessments levied on their property.  The suit was commenced more than a year after the last publication of the ordinance.  In support of the attack upon the validity of the assessments appellants alleged in their complaint that the petition for the improvement was not signed by a majority in value of the property owners in the district, that there was an error in the record of the ordinance as it now appears on the journals of the city council concerning the recitals of the estimated cost of the improvement; and that the lots owned by appellants are situated so far away from any of the sewer lines that no possible benefit can accrue to the property from the construction of the improvement. On the final hearing of the cause the chancellor sustained the complaint as to some of the lots owned by appellants upon proof showing that no benefit could possibly accrue

to that property, but dismissed the complaint as to the other lots described.

The facts concerning the passage and publication of the ordinance are as follows: The ordinance as at first recorded on the journals by the city clerk, and as first published the next day, recited the estimated cost of the improvement to be $350,000. The second newspaper publication recited the estimated cost to be $390,000, and the entries on the journals as they now appear recite the same amount of estimated cost. The journals of the city council, where the ordinance is recorded, shows an erasure and a substitution of the figures $390,000 instead of. $350,000 as estimated costs. The journals, however, are properly signed by the mayor and the city clerk. Oral testimony adduced at the hearing before the chancellor tended to show that the original ordinance passed by the city council recited the estimated costs to be $390,-000, and that it was passed by the city council in that form, but that an error was made in recording the same upon the journal, and also in the first publication, but that when the ordinance was presented to the mayor for his signature he discovered the error and directed the city clerk to correct the journal entries so as to show the correct recital of $390,000 estimated cost and to republish the ordinance, which was done. The statute prescribes the form of an ordinance of this particular nature to contain a recital of the estimated cost of the improvement. Kirby's Digest, sec. 5684.

(1) It is unnecessary to decide at this time whether or not the statute is mandatory with respect to this recital, or that a mistake in the recital would invalidate the ordinance. The statute provides that ordinances and by-laws enacted by city council shall "be recorded in a book kept for that purpose, and be authenticated by the signature of the presiding officer of the council and the clerk," and that printed copies of such ordinances published under its authority and certified transcripts thereof shall be received in evidence. Kirby's Digest,

secs. 5471, 5473. The record of the ordinance is, therefore, presumptively correct at least, and the evidence warrants the findings that the erasure and correction in the record was made at the suggestion of the mayor, for the record was signed, and republication of the ordinance within the time specified by statute was sufficient to correct the error in the former publication.

(2) The action was not commenced within thirty days after publication of notice of the findings of the city council on the question of a majority having signed the petition as provided by statute, and it was, therefore, too late to raise that question. Acts of 1913, p. 527; *Waters v. Whitcomb,* 110 Ark. 511.

The last question for determination is whether or not the decision of the chancery court was correct in refusing to cancel the assessments upon appellant's lots. The city of North Little Rock, formerly Argenta, covers a territory running north from the bank of the Arkansas River and is alluvial land with the highest point along the bank of the river and sloping back from that point as is usual in that character of formation. The principal business portion of the city is on the south side of it near the river and has been heretofore sewered. The present district begins farther north and extends out nearly to the northern limits of the city. The evidence shows that the only practical means of sewering a large area back from the river is to embrace the whole territory in one district so that a pumping station can be maintained on the river bank in times of high water when the waters in the river rise above the mouth of the sewer in order to give sufficient fall of the sewer mains to carry off the sewage from property distant from the river bank. The mouth of the sewer is necessarily placed below high water mark and that necessitates the maintenance of a pumping station to pump out the sewers in time of high water. Appellant's lots, involved in this controversy as presented here, lie on an average of a mile north from the river and from 250 feet to 1000 feet from the nearest

sewer line as now constructed. The testimony shows also that the cost of constructing a sewer district embracing these lots so as to run sewers to the river without including the remainder of the property in this district would be prohibitive, and that the only method of constructing sewers for these lots, unless they be connected with this district, would be to use septic tanks. The testimony shows the cost of running lines of sewers from these lots to the sewers as now constructed in this district, and the testimony does not show that the cost is prohibitive.

(3)     The case was submitted on the testimony of the engineer of the district so far as relates to the issues concerning the benefits to the property of appellants, and that testimony fails to show that no benefit is derived from the construction of the improvement. On the contrary, the fair inference from the testimony of that witness is that the cost of running sewers from those lots to the sewer now established would not be prohibitive and that benefits will accrue not only from the actual use of the sewers constructed in the district, but other benefits from the construction of sewers in that territory.

The facts are not unlike those involved in the case of *Board of Improvement* v. *Pollard*, 98 Ark. 543, where we held that under a statute like ours, which gives the property owner the right of appeal from the decision of the board of assessors, the courts will not disturb the findings of such board unless it affirmatively appears that no possible benefit can accrue from the improvement. The decision on that point was couched in the following language: "It has been repeatedly held that these statutes provide a reasonable opportunity for the property owner to be heard, and that mere mistakes of judgment relative to the assessment of the benefits upon the land in an improvement district can not be reviewed by the courts. If any benefit accrues to the land by reason of the improvement, then the owner is precluded after the time given him by the statute from raising any objection thereto." In that case we reversed the decision

of the chancellor upon testimony which was of much greater force in its tendency to show that there was very little, if any, benefit accruing to the property involved in the controversy.

Applying the principles announced in that case to the facts of the present one, it is clear that the decision of the chancellor was correct. The decree is, therefore, affirmed.